UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PULTE HOMES OF NEW YORK, LLC, :
         Plaintiff, :
           :
v. : **OPINION AND ORDER**
           :
TOWN OF CARMEL and TOWN OF : 16 CV 8093 (VB)
CARMEL PLANNING BOARD, :
         Defendants. :
------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Pulte Homes of New York, LLC ("Pulte"), brings this action pursuant to 42 U.S.C. § 1983 against defendants Town of Carmel (the "Town") and Town of Carmel Planning Board (the "Planning Board"), alleging defendants violated its constitutional rights to equal protection and procedural and substantive due process, and seeking damages, declaratory relief, and equitable relief.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #20).

    For the following reasons, the motion is GRANTED in part and DENIED in part.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    In deciding the pending motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in Pulte's favor.

    Pulte owns approximately one hundred acres of land in the Town of Carmel, divided into three lots: "Lot 3," "Lot 4," and "Lot 5" (together "the property"). (Am. Compl. ¶ 18).

    On February 3, 2006, the Planning Board "granted final site plan approval" for the property to be developed with a total of 313 "dwelling units." (Am. Compl. ¶ 22).

1

In August 2008, Pulte sought site plan amendments. In October 2008, Pulte was informed it would be required to pay a $3,500 recreation fee per dwelling unit. (Miranda Decl. Ex. G at 2).[1]

On October 28, 2008, Pulte paid $385,000 in recreation fees "under protest" for Lot 4 because had it not made the payment, it "could not have commenced construction on Lot 4 and all development would have ground to a halt." (Am. Compl. ¶¶ 28-29).

On November 12, 2008, the Planning Board passed three resolutions adopting Pulte's site plan amendments (the "2008 Resolutions").

On January 7, 2009, Pulte initiated an Article 78 proceeding in Supreme Court, Putnam County, challenging the imposition of the recreation fees. By decision and order dated March 15, 2010, the Article 78 court denied the Article 78 petition, finding the "Planning Board's request for recreation fees in accordance with Local Law #4 of 2006 was not arbitrary or capricious." (Miranda Decl. Ex. G at 4). However, on May 3, 2011, the Appellate Division, Second Department, reversed, concluding "the Planning Board made no 'individualized consideration' prior to imposing the recreation fee and made no specific findings as to the recreational needs created by the petitioner's improvements." (Id. Ex. H). The court ordered that the matter to be "remit[ted] . . . to the Planning Board for further consideration as to whether a recreation fee is appropriate, the amount of the fee, if any, and to make the specific findings which support such a fee." (Id.).

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

On June 28, 2012, Pulte applied for additional site plan amendments and sought approvals for Lots 3 and 5. From May through September 2013, the Planning Board held public hearings on Pulte's plans, and by resolutions dated September 27, 2013, it approved the plans and imposed a recreation fee of $3,500 per unit (the "2013 Resolutions"). On October 18, 2013, Pulte paid the Town $364,000 for recreation fees on Lots 3 and 5, again "under protest." (Am. Compl. ¶ 38).

On October 25, 2013, Pulte commenced a second Article 78 proceeding challenging the recreation fees levied in the the 2013 Resolutions. By decision and order dated March 11, 2014, the Supreme Court, Putnam County, "ORDERED and ADJUDGED that the determination of [the] Planning Board finding that Lots 3 and 5 provide inadequate current and future recreation space, and imposing an imposition of a fee of $3,500.00 per unit is annulled." (Miranda Decl. Ex. D at 9). However, the Supreme Court's decision did not direct the Town or Planning Board to refund the recreation fee payments Pulte had already made.

In March and April 2014, Pulte wrote to defendants to request a refund of the money paid under the now annulled—at least in part—2013 Resolutions. Defendants refused to refund the money.

As a result, on July 14, 2014, Pulte moved to resettle the March 11, 2014, Supreme Court order to seek a "ministerial clarification directing the Town's Comptroller to refund the annulled recreation fees paid under protest and declaring all other portions of the 2013 Resolutions as lawful and valid." (Am. Compl. ¶ 69). On September 24, 2014, the Supreme Court denied Pulte's motion, finding Pulte had "failed to request such refund in its Article 78 petition, despite the fact that it paid the monies approximately 7 days prior to commencing" the Article 78 proceeding. (Miranda Decl. Ex. E. at 2). The Supreme Court concluded Pulte was "left with two

3

options – direct appeal or by motion to vacate." (Id. at 3). By decision and order dated February 3, 2016, the Appellate Division, Second Department, affirmed the Supreme Court's ruling denying the motion to resettle. (Miranda Decl. Ex. F). It explained that "in seeking to amend the judgment so as to provide that it was entitled to a refund of the recreation fee it paid to the Planning Board, [Pulte] was not seeking to correct a mere clerical error[,] [r]ather [Pulte] sought to change the judgment in a substantive manner." (Id. at 3).

On October 17, 2016, Pulte commenced the instant action, seeking to recover the $749,000 in recreation fees it paid in 2008 and 2013, plus "further compensatory damages," costs, and fees. (Am. Compl. ¶ 1).

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, Pulte's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

II.      Statute of Limitations

Defendants argue the claims set forth in Pulte's amended complaint are barred by the applicable statute of limitations.

The Court agrees with respect to the claims relating to the 2008 Resolutions, but disagrees with respect to the claims relating to the 2013 Resolutions.

The parties agree that the applicable statute of limitations in this Section 1983 case is three years. "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. . . . The claim accrues when the plaintiff 'knows or has reason to know' of the harm." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (citing Cullen v. Margiotta, 811 F.2d 698, 725 (2d Cir.), cert. denied, 483 U.S. 1021 (1987)). "The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).

This action was commenced on October 17, 2016. Thus, only incidents that occurred after October 17, 2013, are actionable.

The latest point at which Pulte was allegedly injured and thus knew or should have known of the harm, was when it paid the recreation fees of which it complains. Pulte paid the recreation fees imposed by the 2008 Resolutions on October 28, 2008, and it paid the recreation fees imposed by the 2013 Resolutions on October 18, 2013.

Accordingly, Pulte's claims relating to the 2013 Resolutions are timely, but those relating to the 2008 Resolutions are not.

5

Pulte argues all of its claims are timely by virtue of the continuing violation doctrine. In particular, Pulte alleges the Town has refused to refund the fee payments, despite state court orders invalidating their imposition. According to Pulte, defendants now claim both Resolutions are invalid in their entirety—not just with respect to the recreation fees aspect—and as a result they continue to "prevent[] any permits and certificates of occupancy from issuing for units approaching or under construction." (Am. Compl. ¶ 67). Pulte alleges defendants thus "continue to engage in . . . deceptive and unlawful practices" which are causing Pulte "economic injury on a daily basis" and that defendants' deceptive intentions only came to light after Pulte demanded a refund. (Id. ¶ 75).

The Court finds these facts do not constitute a continuing violation.

Under the continuing violation doctrine, "[w]here a plaintiff can demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was a part of the violation, even conduct that occurred outside the limitations period." Roman Catholic Diocese of Rockville Ctr., New York v. Inc. Vill. of Old Westbury, 2011 WL 666252, at *12 (E.D.N.Y. Feb. 14, 2011) (internal quotations and citation omitted). "However, the mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation." Blankman v. Cty. of Nassau, 819 F. Supp. 198, 207 (E.D.N.Y.), aff'd, 14 F.3d 592 (2d Cir. 1993) (citing Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) and United Air Lines v. Evans, 431 U.S. 553, 558 (1977)).

Moreover, "courts of this circuit consistently have looked unfavorably on continuing violation arguments," and apply the theory "only under 'compelling circumstances.'" Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989) (quoting LaBeach v. Nestle Co., 658 F. Supp. 676, 687 (S.D.N.Y. 1987)). Compelling circumstances have been found when "'the

6

unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is a[n] express, openly espoused policy [that is] alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness.'" Remigio v. Kelly, 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 12, 2005) (quoting Yip v. Bd. of Trs. of State Univ. of New York, 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004), aff'd sub nom. Yip v. Bd. of Trs. of State Univ. of New York, 150 F. App'x 21 (2d Cir. 2005) (summary order).

Here, Pulte has not alleged any such compelling circumstances. Pulte knew the exact moment when its constitutional rights were allegedly impinged—when it made payments "under protest" to the Town on the basis of Resolutions it considered unlawful. Moreover, its broad and conclusory allegations suggesting an ongoing conspiracy to cause injuries are insufficient to show a continuing violation. See Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980) ("Characterizing . . . separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts.").

The Court likewise rejects Pulte's equitable estoppel argument. "'Equitable estoppel will apply where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Mohamed v. Donald J. Nolan, Ltd., 967 F. Supp. 2d 647, 655 (E.D.N.Y. 2013), aff'd sub nom. Mohamed v. Nolan Law Grp., 574 F. App'x 45 (2d Cir. 2014) (summary order) (quoting Zumpano v. Quinn, 6 N.Y.3d 666, 674 (2006)). "A plaintiff asserting equitable estoppel 'must demonstrate reasonable reliance on the defendant's misrepresentations.'" Id. "'It is fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit.'" Id.

7

Here, Pulte has not plausibly alleged fraud, misrepresentation, or deception by defendants. At most, it alleges defendants communicated their interpretation of the state court decisions in the Article 78 proceedings—i.e., that those decisions annulled the entire Resolutions, not just the fees. Pulte does not allege, for example, that defendants represented they would return the fees if Pulte did not file suit.

Accordingly, Pulte's claims related to the 2008 Resolutions are barred by the statute of limitations. Its claims related to the 2013 Resolutions are timely.

III.   Res Judicata

Because Pulte's claims related to the 2013 Resolutions are not barred by the applicable statute of limitations, the Court next addresses defendants' argument that Pulte's claims are barred by the doctrine of res judicata.

The Court concludes Pulte's surviving claims are not barred by res judicata.

"'Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 195 (2d Cir. 2010) (quoting Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)).

A federal court must give the same preclusive effect to a state court decision as the state's law would give it. See 28 U.S.C. § 1738; Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Thus, New York law governs the res judicata analysis here.

Under New York law, res judicata "'will bar litigation of a claim that was either raised, or could have been raised, in a prior action provided that the party to be barred had a full and fair opportunity to litigate any cause of action arising out of the same transaction and the prior

8

disposition was a final judgment on the merits.'" Pope v. Enzo Biochem, Inc., 432 F. App'x 7, 9 (2d Cir. 2011) (summary order) (quoting Kinsman v. Turetsky, 21 A.D.3d 1246, 1246 (3d Dep't 2005)).

However, "[r]es judicata does not . . . 'bar subsequent litigation where the prior action could not have provided the relief the plaintiff seeks in the subsequent litigation.'" McGuinn v. Smith, 2012 WL 12887595, at *5 (S.D.N.Y. Sept. 7, 2012) (quoting Vega v. State Univ. of N. Y. Bd. of Trs., 67 F. Supp. 2d 324, 333 (S.D.N.Y. 1999)).

Of particular relevance here, res judicata is inapplicable where "a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004) (citing Davidson v. Capuano, 792 F.2d 275, 278–79 (2d Cir. 1986)). See also McGuinn v. Smith, 2012 WL 12887595, at *6.

Accepting Pulte's allegations as true, and drawing all reasonable inferences in its favor, the amended complaint seeks relief not available to Pulte in its Article 78 proceedings. In particular, Pulte alleges it is suffering "ongoing[] economic injury" as a result of defendants' position that the plan approvals for the property are no longer valid and their continued refusal to refund Pulte for the recreation fees it paid. (Am. Compl. ¶ 58; see also id. ¶¶ 67, 92-93). Moreover, Pulte seeks "compensatory damages" above and beyond the refund it sought in its Article 78 proceedings. (Id. ¶ 1, Prayer for Relief ¶ (a)). These allegations and claims for relief were not before the state courts in Pulte's Article 78 proceedings.

Accordingly, Pulte's 2013 Resolution-based claims are not barred by res judicata.

9

## CONCLUSION

Defendants' motion to dismiss is GRANTED with respect to Pulte's claims related to the 2008 Resolutions and DENIED with respect to Pulte's claims related to the 2013 Resolutions.

The Court will schedule an initial conference by separate order.

The Clerk is instructed to terminate the motion. (Doc. #20).

Dated: September 5, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge